UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES WHEELER,<br><br>    Plaintiff,<br><br>v.<br><br>AMERICAN FAMILY HOME INSURANCE COMPANY,<br><br>    Defendant. | Case No. 20-cv-01502-JSW<br><br>**ORDER GRANTING, IN PART, AND DENYING, IN PART, DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND SETTING CASE MANAGEMENT CONFERENCE**<br><br>Re: Dkt. No. 85 |

Now before the Court for consideration is the motion for summary judgement or, in the alternative, for partial summary judgment, filed by Defendant American Family Home Insurance Company ("AFH"). The Court has considered the parties' papers, relevant legal authority, and the record in this case, and it HEREBY GRANTS, IN PART, AND DENIES, IN PART, AFH's motion.

**BACKGROUND**

This dispute arises out of AFH's decision to deny a claim for coverage under Plaintiff James Wheeler's ("Wheeler") Collector Vehicle Insurance Policy (the "Policy"). AFH argues that the property damage for which Wheeler claimed benefits is not covered because the person in possession of the car at the time of the accident was not covered by the Policy. In the alternative, AFH argues that Wheeler made material misrepresentations to AFH, which voids the Policy. The following facts are undisputed, unless otherwise noted.

Wheeler is an exotic car enthusiast who resides in Northern California. (Dkt. No. 88-2, Declaration of James Wheeler ("Wheeler Decl."), ¶¶ 11, 33.)[1] In 2016, Wheeler applied to insure

---

[1] AFH objects to the portion of Mr. Wheeler's declaration in which he states he never loaned

two luxury cars, a Lamborghini and a Ferrari, through AFH.  (Wheeler Decl., ¶ 7; Dkt. No. 85-2, Declaration of Julie Deininger, ¶ 4; Dkt. No. 85-4, AFH Index of Exhibits ("AFH Index"), Ex. 1, Policy at 14.)[2]

Part D of the Policy sets forth the coverage provisions for property damage.  AFH "will provide for sudden, direct, and accidental loss to 'your covered auto' including equipment, minus any deductible shown in the Declarations . . . [AFH] will pay for loss to 'your covered auto' caused by: … 'Collision' only if the declarations indicate that Collision Coverage is provided for that auto."  (Policy at 56.)[3]  "Your covered auto" means "[a]ny vehicle shown in the Declarations which is a 'Collector Vehicle' and is used solely for 'occasional pleasure use," which is defined as "activities consistent with and related to participation in vehicle exhibitions, vehicle club activities, parades, leisure/pleasure drives, or 'maintenance.'"  (*Id.* at 53-54.)  The terms of the Policy also specify that "occasional pleasure use" does not include "business or commercial use."  (*Id.* at 54.)

The Policy includes an Overview that states that AFH "expects [Wheeler] to [n]otify [AFH] of all licensed household members and any other regular operators.  Failure to notify [AFH] of all licensed household members may result in coverage not being available if they operate [Wheeler's] vehicle."  (*Id.* at 5.)  Wheeler identified his fiancée, Yolanda George ("George"), as a driver who regularly operated the cars and stated the cars were stored at an address in Northern California.  (*Id.* at 16, 18.)

From 2018 until early 2019, Gasparian possessed and stored both cars in Los Angeles with Wheeler's permission.  (Wheeler Decl., ¶ 4; Dkt. No. 85-1, Declaration of Stephen P. Ellingson ("Ellingson Decl."), ¶ 5; AFH Index Ex. 13, Deposition of James Wheeler ("Wheeler Depo."), at

---

his vehicles to his acquaintance Henry Gasparian ("Gasparian").  The Court has not relied on that statement to resolve the motion, and it overrules the objection as moot.

[2] AFH has numbered the pages of its exhibits from 1 to 250.  With the exception of citations to the Policy, the Court has cited to page numbers within the specific exhibit rather than the sequential numbers on the Index.

[3] The terms "you" and "yours" are defined throughout the Policy as "[t]he 'named insured' shown in the Declarations; and '[t]he spouse if a resident of the same household and if shown in the Declarations as an Operator."  (Policy at 29, 53.)

2

25:2-5.) Gasparian testified that he would ask Wheeler for permission to use the Lamborghini before driving it. (Ellingson Decl., ¶ 7; AFH Index Ex. 15, Deposition of Henry Gasparian ("Gasparian Depo.") at 25:10-15.)

In April 2018, the Ferrari was damaged while in Gasparian's possession. Wheeler submitted a claim with AFH ("Claim 1") but ultimately withdrew it. (Dkt. No. 85-3, Declaration of Paul Spanja ("Spanja Decl."), ¶ 5; AFH Index, Ex. 2, AFH Letter closing claim.) In September 2018, Wheeler gave Gasparian permission to use the Lamborghini as a prop in a music video. (Wheeler Decl., ¶ 15.) Between film takes, the Lamborghini was parked on a city street and an unknown driver hit and damaged the car. (*Id.*, ¶¶ 17, 19.) George was on set to watch the music video, but she did not see the Lamborghini get hit. (*Id.*, ¶¶ 16, 19, 21; *see also* Dkt. No. 88-2, Declaration of Yolanda George ("George Decl."), ¶ 3.) Wheeler submitted a claim to AFH for the damage to the Lamborghini ("Claim 2"), and AFH approved it and paid for the property damage. (Dkt. No. 88-1, Declaration of John T. Bell ("Bell Decl."), ¶ 8; Dkt. No. 88-4, Wheeler Index of Exhibits ("Wheeler Index"), Ex. D, Excerpt of claim file.)[4] The parties dispute whether Gasparian or George had possession of the car at the time of the accident that gave rise to Claim 2. (*See* Wheeler Decl., ¶ 22; Wheeler Index, Ex. D.)

Wheeler attests that between October 2018 and January 24, 2019 he spoke with Marc McQuitty ("McQuitty"), AFH's claim adjuster, on four separate occasions about how he was using the Ferrari and Lamborghini. (Wheeler Decl., ¶¶ 27, 31.) Wheeler also attests that during each conversation, he stated that he allowed his cars to be used as props in music videos and that he did not receive compensation for these uses. (*Id.*, ¶ 27.) According to Wheeler, McQuitty represented to him that the Policy allowed for the cars to be used as props in music videos, that the use of the cars in music videos was similar to the cars being used in car exhibits, and that Wheeler would not need additional insurance to cover the use of the cars in music videos. (*Id.*, ¶ 32.)

On March 18, 2019 the Lamborghini was damaged in another collision. On March 26,

---

[4]   AFH objects to a portion of Mr. Bell's declaration regarding a statement made by its previous counsel. The Court has not relied on that statement to resolve the motion, and it overrules that objection as moot.

3

2019, Wheeler filed a claim with AFH ("Claim 3"), which is the claim at issue in this case. AFH wrote a letter to Wheeler acknowledging it had received the claim and acknowledging that Wheeler "reported" the Lamborghini "was damaged in an accident while parked on the street, during the use by another party that you had let drive the vehicle." (*See* Spanja Decl., ¶ 9; AFH Index, Ex. 7.) As part of AFH's investigation of Claim 3, its counsel examined Wheeler under oath. (*See* Spanja Decl., ¶ 12; AFH Index, Ex. 10 ("Wheeler EUO").) AFH, through counsel, also interviewed Gasparian. (*See* Spanja Decl., ¶ 13; AFH Index, Ex. 11, Recorded Statement of Henry Gasparian ("Gasparian Stmt.").)

According to Gasparian, on March 18, 2019, he drove the Lamborghini and parked it on the street in front of his brother's store, Casanova. (Gasparian Depo. at 29:24-30:5; Gasparian Stmt. at 3-4; *see also* Wheeler Decl., ¶ 34.) Gasparian also claimed that a music video was being shot in front of Casanova that day. (Gasparian Depo. at 30:3-5.) While a group of people were waiting for a cameraman to arrive, a driver hit and damaged the Lamborghini. (Gasparian Stmt. at 4.) Wheeler attests that he was not aware of a video shoot on March 18, 2019. (Wheeler Decl., ¶ 35.) Gasparian was not consistent about whether the video was for one of Wheeler's artists and whether the Lamborghini was going to be used in the video. (*Compare* Gasparian Depo. at 30:1-31:23 *with* Gasparian Stmt. at 3-5.)

On September 9, 2019, AFH denied Claim 3 because the Policy "limits collision coverage to damage occurring during occasional pleasure use," and it concluded "the insured vehicle was being used for a commercial purpose at the time of the accident." (AFH Index, Ex. 12, Denial Letter at 1, 6.) AFH concluded that Gasparian, with Wheeler's permission, was using the Lamborghini as a prop in music videos. (*Id.*)

Wheeler asserts four causes of action against AFH: (1) breach of written contract; (2) breach of the implied covenant of good faith and fair dealing; (3) fraud; and (4) negligent misrepresentation. (TAC ¶¶ 25-60.) AFH filed a counterclaim asserting two claims for declaratory relief: (1) a declaration that there is no coverage for Claim 3 based on commercial use; and (2) that other Policy exclusions preclude coverage for Claim 3. (Dkt. No. 7.)

The Court will address additional facts as necessary in its analysis.

# ANALYSIS

**A.     Legal Standards Applicable to Motion for Summary Judgment.**

"A party may move for summary judgment, identifying each claim or defense . . . on which summary judgment is sought." Fed. R. Civ. P. 56(a). A principal purpose of the summary judgment procedure is to identify and dispose of factually unsupported claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Summary judgment, or partial summary judgment, is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court may not weigh evidence or make determinations of credibility. Rather, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986).

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323; *see also* Fed. R. Civ. P. 56(c). An issue of fact is "genuine" only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party. *Anderson*, 477 U.S. at 248-49. A fact is "material" if it may affect the outcome of the case. *Id.* at 248. If the party moving for summary judgment does not have the ultimate burden of persuasion at trial, the party must produce evidence which either negates an essential element of the non-moving party's claims or show that the non-moving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

Once the moving party meets its initial burden, the non-moving party must "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (quoting *Richards v. Combined Ins. Co.*, 55 F.3d 247, 251 (7th Cir. 1995). It is not the Court's task "to scour the record in search of a genuine issue of triable fact." *Id.* (quoting *Richards*, 55 F.3d at 251); *see also* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record."). "A mere scintilla of evidence will not be sufficient to defeat a properly supported motion for summary

judgment; rather, the nonmoving party must introduce some significant probative evidence tending to support the complaint." *Summers v. Teichert & Son, Inc.*, 127 F.3d 1150, 1152 (9th Cir. 1997) (citation and internal quotation marks omitted).  If the non-moving party fails to point to evidence precluding summary judgment, the moving party is entitled to judgment as a matter of law.  *Celotex*, 477 U.S. at 323.

**B.    AFH Is Not Entitled to Judgment in Its Favor on Claim 1.**

AFH argues it is entitled to summary judgment because there is no coverage for Claim 3, which would entitle it to judgment in its favor on Wheeler's first and second claim for relief as well as on its counterclaim for declaratory relief.  AFH's primary argument is that there is no coverage because Gasparian possessed the Lamborghini on the date of the accident.  In the alternative, AFH argues that Wheeler made material misrepresentations that void the Policy and that the defense of unclean hands bars his claims.

**1.    General Principles Governing the Interpretation of an Insurance Contract.**

Under California law, "interpretation of an insurance policy is a question of law," and the Court applies general principles of contract interpretation. *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 18 (1995).  "[I]nsurance coverage is interpreted broadly so as to afford the greatest possible protection to the insured, whereas exclusionary clauses are interpreted narrowly against the insurer." *MacKinnon v. Truck Ins. Exch., Inc.*, 31 Cal. 4th 635, 648 (2003) (internal brackets, quotations, and citations omitted).  "In construing the language of an insurance policy, a court should give the words used their plain and ordinary meaning, unless the policy clearly indicates to the contrary." *Giddings v. Indus. Indem. Co.*, 112 Cal. App. 3d 213, 218 (1980).  If policy language is "clear and explicit, it governs." *Bank of the West v. Super. Ct.*, 2 Cal. 4th 1254, 1264 (1992); *see also Westoil Terminals Co. v. Industrial Indem. Co.*, 110 Cal. App. 4th 139, 146 (2003) ("Although insuring clauses normally are interpreted broadly and exclusions strictly are construed, where an exclusion is clear and unambiguous, it is given its literal effect.") (citations and quotation omitted).

"[Courts] must also interpret these terms in context and give effect to every part of the policy with each clause helping to interpret the other." *Palmer v. Truck Ins. Exch.*, 21 Cal. 4th

1109, 1115 (1999) (citations and quotations omitted).  "A policy provision will be considered ambiguous when it is capable of two or more constructions, both of which are reasonable. . . . But language in a contract must be interpreted as a whole, and in the circumstances of the case, and cannot be found to be ambiguous in the abstract." *Waller*, 11 Cal. 4th at 18 (citation omitted). Any ambiguity or uncertainty in an insurance policy is to be resolved against the insurer. *Delgado v. Heritage Life Ins. Co.*, 157 Cal. App. 3d 262, 271 (1984).  "Because of the superior bargaining power of the insurer, exceptions and exclusions in the insurance policy are strictly construed against the insurer and liberally interpreted in favor of the insured." *Id.*

    **2.**    **AFH Has Not Met Its Burden to Show Claim 3 Is Excluded from Coverage.**

AFH argues that it is entitled to summary judgment on the breach of contract claim because Gasparian, who possessed the car on March 18, 2019, was not covered by the Policy.[5]  To prevail on his breach of contract claim, Wheeler must show that Claim 3 comes within the basic coverage scope of the Policy.  *Aydin Corp. v. First State Ins. Co.*, 18 Cal. 4th 1183, 1188 (1998); *see also MRI Healthcare Ct. of Glendale, Inc. v. State Farm Gen. Ins. Co.*, 187 Cal.App.4th 766, 777 (2010) (citations omitted) ("When an issue of coverage exists, the burden is on the insured to prove facts establishing that the claimed loss falls within the coverage provided by the policy's insuring clause.") ("*MRI Healthcare*").  "If coverage does not exist under the insuring agreement, the inquiry is at an end.  There is no need to look to the exclusions because they cannot expand the basic coverage granted in the insuring agreement." *Stanford Ranch, Inc. v. Maryland Cas. Co.*, 89 F.3d 618, 627 (9th Cir. 1996).  If Wheeler is able to demonstrate that coverage exists, the burden shifts to AFH to show "the claim is specifically excluded." *MRI Healthcare*, 187 Cal. App. 4th at 777 (citation omitted).

The parties do not dispute that the Policy contains Collision Coverage.  (Policy at 36.) Further, it is undisputed that Gasparian was not a named insured and was not named as an operator

---

[5]    As noted above, in its counterclaim, AFH sought a declaration that there was no coverage because Wheeler used the Lamborghini for commercial purposes.  AFH does not pursue that argument in its motion, except in connection with Wheeler's second claim for relief.  Because the Court concludes AFH is not entitled to summary judgment on Wheeler's breach of contract claim based on the permissive user argument, AFH also is not entitled to summary judgment on this aspect of its counterclaim.

of the Lamborghini. (*Id.* at 14, 18.) As with any contract, to determine whether Claim 3 falls within the scope of the Policy's coverage provisions, the Court begins by examining the terms of those provisions. In the section of the Policy that provides for liability coverage, the term "insured" includes "any person" using "your covered auto." (*Id.* at 30.) In the second of the Policy that covers property damage, "your covered auto" is not defined by reference to who is using the vehicle. It is defined by the vehicle listed in the Declarations and by how that vehicle is used. (*See Id.* at 53.) Additionally, the provisions of the California Insurance Code suggest that, in general, collision coverage attaches to the car, not the driver. *See* Cal. Ins. Code § 660(d) (2017) (defining collision coverage as including "all coverage of loss or damage to an automobile insured under the policy resulting from collision or upset.").[6]

Therefore, the Court turns to whether Exclusion 20, which excludes coverage for "loss to 'your covered auto' while it is being driven by a 'family member' who is not shown in the Declarations as an Operator," applies. (Policy at 59.) It is undisputed that Gasparian is not a "family member" as that term is defined in the Policy. (*Id.* at 29.) Although AFH argues that the use of "family member" indicates the limited nature of Collision Coverage, that term does not clearly and unambiguously exclude coverage for "any person" other than the named insured.

AFH also argues that the cautionary language of the Policy Overview demonstrates that it did not intend to cover a collision while a "permissive user" operated the Lamborghini. The Policy Overview states that AFH expected Wheeler to "**[n]otify [it] of all licensed household members** and any other regular operators. Failure to notify [AFH] of all licensed household members may result in coverage not being available if they operate your vehicle." (*Id.* at 5 (emphasis in original).) This language is ambiguous for two reasons. First, it does not clearly

---

[6] Case law from other jurisdictions also supports this principle. *See, e.g., Aetna Cas. & Sur. Co. v. Penn. Nat. Mut. Cas. Ins. Co.*, 316 N.C. 368, 370 (1986) ("The issues of who is an 'insured' and of permissive use are critical in the resolution of a dispute involving automobile *liability* insurance policies but not in cases involving automobile collision coverage . . . . Collision insurance is basically a contract of indemnity which merely covers physical damage to a specific insured vehicle . . . irrespective of who is driving.") (emphasis in original); *Founders Ins. Co. v. Walker*, 37 N.E.3d 338, 342 (Ill. 2015) ("[C]ollision insurance provides protection against loss or injury to the vehicles described in the policy as a result of contact with another object.").

8

inform an insured of the specific instances when coverage may be lost if they do not report regular operators. Second, exclusions are to be construed strictly, and it is not clear that a failure to notify AFH of "other regular operators" may impact coverage because the second sentence omits that term altogether. *See Westoil Terminals*, 110 Cal. App. 4th at 146. Because ambiguities are resolved against the insurer, the Court concludes AFH has not met its burden to show Exclusion 20 applies. *See Delgado*, 157 Cal. App. 3d at 271.

Accordingly, the Court DENIES, IN PART, AFH's motion for summary judgment.

### 3. AFH Has Not Met Its Burden to Show the Policy is Void.

AFH also moves for summary judgment on the basis that the Policy is void either because Wheeler made misrepresentations when he submitted Claim 2 or because he made misrepresentations during the renewal process. Whether a misrepresentation is material "is determined by its probable and reasonable effect upon the insurer." *Mitchell v. United Nat. Ins. Co.*, 127 Cal. App. 4th 457, 474 (2005). A statement is material "if the misrepresentation concerns a subject reasonably relevant to the insured's investigation, and if a reasonable insurer would attach importance to the fact misrepresented[.]" *Cummings v. Fire Ins. Exch.*, 202 Cal. App. 3d 1407, 1417 (1988). A court may determine materially as a matter of law "*if* reasonable minds could not disagree on the materiality of the misrepresentations." *Id.* (emphasis in original).

#### a. AFH Has Not Met Its Burden to Show the Policy is Void Because of Wheeler's Misrepresentations in connection with Claim 2.

AFH contends the record shows that when he submitted Claim 2, Wheeler stated that George possessed the Lamborghini when that accident occurred. However, during Claim 3, he represented that Gasparian possessed the Lamborghini at the time of the accident leading to Claim 2. AFH argues these contradictions show that, at some point, Wheeler has misrepresented who possessed the Lamborghini at the time of the accident leading to Claim 2, which would have rendered the Policy void as of September 22, 2018.

AFH relies, in part, on the general principles above and the Policy's fraud provision. "A fraud and concealment provision in an insurance contract will generally void the policy where an insured attempts to defraud the insurer" on a material matter. *Leasure v. MSI Ins. Co.*, 65 Cal.

9

App. 4th 244, 248 (1998).  As discussed in Section B.2, AFH has not demonstrated that Wheeler's alleged misrepresentation was material because the scope of coverage appears dependent upon whether a *vehicle* was covered, rather than who had possession of the vehicle at the time of the accident.  Thus, AFH has not met its burden to show it is entitled to judgment on the basis that the Policy is void because of Wheeler's alleged misrepresentations in connection with Claim 2.

    **b. AFH Has Not Met Its Burden to Show the Policy is Void Because of Wheeler's Misrepresentations in connection with the Policy's Renewal.**

AFH also argues that Wheeler made misrepresentations about whether he "loaned" out the Lamborghini during the renewal process.  A misrepresentation or concealment of a material fact in an insurance application establishes a complete defense in an action on the policy.  *Super. Dispatch Inc. v. Ins. Corp. of N.Y.*, 181 Cal. App. 4th 175, 192 (2010).  Further, concealment of material facts is a ground for rescission of an insurance policy.  *Thompson v. Occidental Life Ins. Co.*, 9 Cal. 3d 904, 916 (1973).  The California Insurance Code dictates that, for purposes of misrepresentations, policy renewals should be treated the same as policy applications.  Cal. Ins. Code § 361.

"Materiality is determined solely by the probable and reasonable effect which truthful answers would have had upon the insurer."  *Thompson*, 9 Cal. 3d at 916.  In order to demonstrate that information is material, "the insurer [must] demonstrate that had the true facts been disclosed, they would have caused the insurer's underwriters to reject the application or accept it only under different terms."  *Unionamerica Ins. Co., Ltd. v. Fort Miller Group, Inc.*, 590 F. Supp. 2d 1254, 1262 (N.D. Cal. 2008) (citing *Old Line Life Ins. Co. v. Super. Ct.*, 229 Cal. App. 3d 1600, 1604-06 (1991)).  "The fact that the insurer has demanded answers to specific questions in an application for insurance is in itself usually sufficient to establish materiality as a matter of law."  *Thompson*, 9 Cal. 3d at 916.

AFH attests that if it had known Gasparian was a regular operator or that Wheeler was loaning the vehicles to him, it would not have renewed the Policy.  (Deininger Decl., ¶ 5.)  In addition, on November 26, 2018, AFH sent a Missing Information Request to Wheeler and asked for a copy of the title and registration, how the vehicles were being used, and whether they were

10

"rented or loaned to others." (Ellingson Decl., ¶ 4; AFH Index Ex. 4, Missing Information Request.) AFH sent the letter because it was concerned that Wheeler used the Ferrari as a rental during the accident that lead to Claim 1. (Bell Decl., ¶ 11; Wheeler Index Ex. G, Deposition of Paul Spanja ("Spanja Depo."), at 58:11-15.)

According to Mr. Spanja, AFH never received a response to its letter from Wheeler. (Spanja Depo., at 59:22-24, 64:4-5.) Even though AFH did not receive a response, it renewed the Policy for the period of December 30, 2018 to December 30, 2019. (Policy at 3.) In January 2019, however, AFH determined that it would not renew the Policy when it expired on December 29, 2019, because Wheeler failed to respond to its inquiry. (*See* Spanja Depo., at 52:22-53:4; Dkt. No. 60, Third Amended Complaint ("TAC"), ¶ 17; Dkt No. 74, Answer to Third Amended Complaint ("TAC Answer"), ¶ 17.)

The fact that AFH asked if Wheeler loaned his cars to others would generally be sufficient to establish that fact was material. *See Thompson*, 9 Cal. 3d at 916; *Mitchell*, 127 Cal. App. 4th at 475. As discussed in Section B.2, however, the scope of coverage appears dependent upon whether a *vehicle* was covered, rather than who had possession of the vehicle at the time of the accident. In addition, AFH requested that Wheeler respond to the missing inquiry within thirty (30) days, and it contends it never received a response. (*See* Spanja Depo., at 59:22-24, 64:4-5; TAC Answer, ¶ 16.) Although it was concerned that Wheeler may have loaned the Lamborghini and the Ferrari to others, it took no action until January 2019. At that point, AFH decided it would not renew the Policy for the *next* policy period. (TAC Answer, ¶ 17.)

Accordingly, the Court concludes that AFH has not met its burden to show, as a matter of law, that the Policy is void. The Court DENIES, IN PART, its motion on that basis.

### c. AFH Has Not Met Its Burden on Its Unclean Hands Defense.

AFH also relies on an unclean hands defense, which it argues bars all of Wheeler's claims. "The doctrine [of unclean hands] demands that a plaintiff act fairly in the matter for which he seeks a remedy. He must come into court with clean hands, and keep them clean, or he will be denied relief, regardless of the merits of his claim." *Kendall-Jackson Winery, Ltd. v. Super. Ct.*, 76 Cal. App. 4th 970, 978 (1999). "The doctrine of unclean hands requires unconscionable, bad

11

faith, or inequitable conduct by the plaintiff in connection with the matter in controversy." *Fladeboe v. Am. Isuzu Motors Inc.*, 150 Cal. App. 4th 42, 56 (2007). "Whether the defense applies in particular circumstances depends on the analogous case law, the nature of the misconduct, and the relationship of the misconduct to the claimed injuries." *Dickson, Carlson & Campillo v. Pole*, 83 Cal. App. 4th 436, 447 (2000). "The focus is the equities of the relationship between the parties, and specifically whether the unclean hands affected the transaction at issue." *Jaramillo v. County of Orange*, 200 Cal. App. 4th 811, 820 (2011). "The [alleged] misconduct must infect the cause of action before the court. Relief is not denied because the plaintiff may have acted improperly in the past or because such prior misconduct may indirectly affect the problem before the court." *Carman v. Athearn*, 77 Cal. App. 2d 585, 598 (1947).

For the reasons articulated in Section 3, the Court concludes that AFH has not demonstrated that it is entitled to judgment as a matter of law based on its unclean hands defense.

**C.     AFH Is Entitled to Judgment in Its Favor on Wheeler's Bad Faith Claim.**

AFH argues that it is entitled to judgment on Wheeler's claim for breach of the implied covenant of good faith and fair dealing because it acted reasonably when it denied Claim 3. Breach of the implied covenant of good faith and fair dealing involves something more than a breach of the contract or mistaken judgment. *Century Sur. Co. v. Polisso*, 139 Cal. App. 4th 922, 949 (2006). "There must be proof the insurer failed or refused to discharge its contractual duties not because of an honest mistake, bad judgment, or negligence, but rather by a conscious and deliberate act, which unfairly frustrates the agreed common purposes and disappoints the reasonable expectations of the other party thereby depriving that party of the benefits of the agreement." *Id.* (internal citations omitted). To establish a bad faith claim, the insured must show that the insurer withheld benefits due under the policy and that the insurer withheld the benefits unreasonably or without proper cause. *Id.* An insurer does not act in bad faith when it mistakenly withholds policy benefits, if the mistake is reasonable or is based on a legitimate dispute as to the insurer's liability. *Id.*

Generally, when bad faith is alleged, a jury is empowered to resolve conflicting evidence regarding an insurer's conduct and motives. *Dalrymple v. United Servs. Auto. Assn.*, 40 Cal. App.

12

4th 497, 511 (1995). Bad faith becomes a question of law only when there are no conflicting inferences about the insurer's actions and thus reasonable minds could not differ. *Walbrook Ins. Co. v. Liberty Mut. Ins. Co.*, 5 Cal. App. 4th 1445, 1454 (1992). For the reasons that follow, the Court concludes that AFH has met its burden to show it acted reasonably in withholding benefits for Claim 3 because the record demonstrates that AFH reasonably believed that the Lamborghini was being used for business or commercial purposes.

The Policy limits Collision Coverage to "occasional pleasure use," which means "activities consistent with and related to participation in vehicle exhibitions, vehicle club activities, parades, leisure/pleasure drives, or 'maintenance." (Policy at 53-54.) The terms of the Policy also state that "business or commercial use" does not constitute a "leisure/pleasure drive." (*Id.*) "Coverage will be suspended while 'your covered auto' is . . . [u]sed for any commercial use unless prior written consent has been obtained from [AFH]." (*Id.* at 60.)

Wheeler argues that AFH acted unreasonably because a "business or commercial use" requires monetary compensation. However, California courts have construed the term "business" more broadly than Wheeler proposes. "The word 'business' embraces everything about which one can be employed, and it is often synonymous with 'calling, occupation, or trade, engaged in for the purpose of obtaining a livelihood or gain.'" *Burks v. Poppy Const. Co.*, 57 Cal. 2d 463, 468 (1962) (quoting *Mansfield v. Hyde*, 112 Cal. App. 2d 133, 137 (1952)).

During his EUO, Wheeler revealed to AFH that he owned and operated an entertainment company called New Money Music Group. (Wheeler EUO at 17:16-25.) Part of his business model for New Money Music Group included "doing events, doing entertainment . . . things, like parties, events." (Wheeler Depo. at 12:24-25.) Wheeler would do "party promotions" and would have artists "do walk-throughs or whatever to help – help get the party excited." (*Id.* at 16:8-11.) Most of the artists were "not signed to [his] label" and the artists would walk through the parties to get "exposure" or to "get more popular." (*Id.* at 16:20, 23.)

According to Gasparian, Wheeler had "a big network of people in [Los Angeles]," and he "use[d] his cars in LA for a bunch of [music] videos." (Gasparian Stmt. at 8.) Wheeler "kn[e]w[] the whole world [in Los Angeles]" and since "there are not too many [Lamborghini's] on the

street" in Los Angeles, people would know that whoever was driving the Lamborghini was "driving [Wheeler's] car." (*Id.*) In fact, Gasparian testified that Wheeler only gave him permission to drive the cars for "promotional purposes." (*Id.*; Wheeler EUO at 37:14-18.) Gasparian testified that Wheeler left the cars with Gasparian in Los Angeles so that "[w]hen [Wheeler] [would] need something in LA to be done with the car . . . [Wheeler] [could] reach out to [Gasparian]" so he could help." (Gasparian Stmt. at 10.)

Gasparian would never take out the Lamborghini "[j]ust for pleasure, just for fun." (*Id.* at 11.) Both Wheeler and Gasparian acknowledged that the only time Gasparian would drive Wheeler's car was with Wheeler's permission. Otherwise, Gasparian did not feel comfortable driving the car because he "didn't want anything to happen to [the Lamborghini]" and so Gasparian "wouldn't even sit in [the Lamborghini] even if he wanted to go somewhere nice to show it off." ((Wheeler EUO at 37:14-18; Gasparian Depo. at 25:12-15; Gasparian Stmt. at 10-11.) The record demonstrates that Wheeler's entertainment business was not limited to the times he hosted parties and included those times Gasparian drove Wheeler's cars for "promotional purposes." (Gasparian Stmt. at 8.) All of these activities would fall within the broad construction of the term business set forth in *Burks*.

Because Part D of the Policy only covers damage for "occasional pleasure use," and because the Policy explicitly states "business or commercial use" is not covered, the Court concludes no reasonable jury could find that AFH acted unreasonably when it denied the claim based on its conclusion that that at the time of the accident the Lamborghini was being used for business or commercial use.

Accordingly, the Court GRANTS AFH's motion for judgment on Wheeler's second claim for relief.

**D. AFH Is Entitled to Judgment in its Favor on Wheeler's Fraud and Negligent Misrepresentation Claims.**

Wheeler's third and fourth claims are premised on his assertion that McQuitty told him that it was okay for him to use the vehicles as props in music videos. The elements of fraud are: "(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of

falsity (or scienter); (c) intent to defraud *i.e.*, to induce reliance; (d) justifiable reliance; and (e) resulting damage." *Lazar v. Super. Ct.*, 12 Cal.4th 631, 638 (1996) (citation omitted). The elements for negligent misrepresentation are identical, except that Wheeler only needs to prove McQuitty made a statement "without reasonable grounds for believing it to be true[.]" *Fox v. Pollack*, 181 Cal. App. 3d 954, 962 (1986).

AFH argues that Wheeler has no evidence that McQuitty knew he used his vehicles for commercial purposes. Wheeler has not put forth any evidence to show there are genuine issues of fact about what McQuitty knew at the time he allegedly told Wheeler that was an acceptable use. Indeed, all of the information about Wheeler's commercial use came to light during AFH's investigation of Claim 3.

Accordingly, the Court GRANTS AFH's motion on Wheeler's third and fourth claims for relief.[7]

## CONCLUSION

For the foregoing reasons, the Court GRANTS, IN PART, AND DENIES, IN PART AFH's motion for summary judgment. The Court ORDERS the parties to appear on October 28, 2022 at 11:00 a.m. for a case management conference. The parties shall submit a further case management conference statement by October 21, 2022, which shall include the parties' views on whether further ADR efforts would be fruitful.

**IT IS SO ORDERED.**

Dated: September 30, 2022

JEFFREY S. WHITE
United States District Judge

---

[7] In light of this ruling and the Court's ruling on Wheeler's bad faith claim, Wheeler would not be entitled to punitive damages, and the Court GRANTS, IN PART, AFH's motion on that basis as well.